THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| KAYELISE MAY,<br><br>                    Plaintiff,<br><br>v.<br><br>KSL ASSOCIATE GROUP, INC. DBA SAGEWOOD AT DAYBREAK, KISCO SENIOR LIVING LLC, KISCO SENIOR LIVING,<br><br>                    Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING [16] DEFENDANTS' MOTION TO DISMISS**<br><br>Case No. 2:24-cv-00190-DBB<br><br>District Judge David Barlow<br><br>Magistrate Judge Jared C. Bennett |

Defendants KSL Associate Group, Inc. dba Sagewood at Daybreak and Kisco Senior Living LLC (collectively "Sagewood" or "Defendants") move to dismiss Plaintiff Kayelise May's ("Ms. May") Complaint[1] under Federal Rule of Civil Procedure 12(b)(6).[2] For the following reasons, the court grants the motion without prejudice.

### BACKGROUND[3]

A.      **Ms. May's Claims Against Sagewood**

On February 14, 2022, Ms. May began working for Sagewood, an assisted living center, as a Resident's Aide.[4] Soon after beginning work at Sagewood, a coworker assigned to train her began making sexually charged comments toward Ms. May.[5] Among other things, her coworker

---

[1] Compl., ECF No. 1, filed March 12, 2024.
[2] Defs.' Mot. to Dismiss ("Defs.' Mot."), ECF No. 16, filed April 22, 2024.
[3] At the motion to dismiss stage, the court accepts the Complaint's factual allegations as true and views those facts in the light most favorable to the nonmoving party. *Moya v. Schollenbarger*, 465 F.3d 444, 455 (10th Cir. 2006).
[4] Compl. ¶ 13.
[5] Compl. ¶ 15.

groped her breast and told her he wanted to have sex with her.[6] Ms. May reported these incidents of sexual assault and harassment on February 25, 26, and March 1, 2022.[7] After reporting on March 1, 2022, Ms. May was placed on a paid leave of absence during an investigation into her allegations.[8] On March 3, 2022, Sagewood "determined that [Ms. May's] accusations have no validity" and fired her.[9] Ms. May asked for the termination letter in writing, to which Sagewood agreed.[10]

### B. Ms. May's Bankruptcy Filing

Six weeks later, Ms. May and her husband jointly filed a Voluntary Petition for Chapter 7 Bankruptcy in the United States Bankruptcy Court for the District of Utah ("Petition").[11] Ms. May and her husband were represented by counsel in their Chapter 7 bankruptcy proceeding.[12] In the Petition, Ms. May stated that she understood that "making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case" could result in fines or imprisonment under federal law.[13] On April 18, 2022, Ms. May and her husband filed a Statement of Financial Affairs and Schedules with the bankruptcy court in which they identified $65,960.00 in total liabilities.[14] As part of this filing, Ms. May and her husband completed "Schedule A/B: Property" ("Asset Schedule"), which required them to list all of their assets, along with the value of each asset.[15]

---

[6] Compl. ¶¶ 17, 21.
[7] Compl. ¶¶ 19, 20, 24.
[8] Compl. ¶ 25.
[9] Compl. ¶ 31.
[10] *Id.*
[11] Case No. 2:22-bk-21319; Bankruptcy Petition, ECF No. 16-1.
[12] Bankruptcy Petition 7.
[13] *Id.* at 6.
[14] Statement of Financial Affairs and Schedules 1, 28, ECF No. 16-2.
[15] *Id.* at 3–7.

The Asset Schedule specifically requires a debtor such as Ms. May to identify all "[c]laims against third parties, *whether or not you have filed a lawsuit* or made a demand for payment."[16] It additionally lists examples of these potential claims, including "[a]ccidents, *employment disputes*, insurance claims, or rights to sue."[17] Even so, Ms. May did not identify her claim against Sagewood on the Asset Schedule, despite the incidents giving rise to her claims having occurred less than two months earlier.[18] Ms. May affirmed under penalty of perjury that her answers were "true and correct."[19] Ms. May's attorney did not provide any instruction on how to fill out the form or advice on what constitutes a "claim."[20]

On May 16, 2022, Ms. May and her husband amended their Summary of Financial Affairs and Schedules to include a bank account with $5 in it that was previously omitted.[21] They did not update their answer to reflect any potential claims or "employment disputes" against Sagewood.[22] Ms. May again affirmed under penalty of perjury that her answers were "true and correct."[23] Based on Ms. May's filings, on July 28, 2022, the bankruptcy court granted Ms. May and her husband an Order of Discharge.[24] On August 2, 2022, the bankruptcy judge issued an order closing the case.[25]

### C. Current Proceedings

Ten days after the bankruptcy case closed, Ms. May retained an employment attorney in the instant matter regarding her supervisors' conduct at Sagewood that occurred several weeks

---

[16] *Id.* at 6, No. 33.
[17] *Id.*
[18] *See id.*
[19] *Id.* at 27, 35.
[20] Decl. of Kayelise May ("May Decl.") ¶ 8, dated June 20, 2024, ECF No. 27-1.
[21] Amended Bankruptcy Petition 5, ECF No. 16-3.
[22] *Id.* at 6, No. 33.
[23] *Id.* at 8.
[24] Order of Discharge, ECF No. 16-4.
[25] Bankruptcy Docket No. 20, ECF No. 16-5.

before her bankruptcy filing.[26] Ms. May explains that prior to this meeting with her attorney, she felt what happened to her was wrong but did not know whether she had any claims against Sagewood or if Sagewood did anything illegal.[27]

On December 1, 2022, Ms. May filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").[28] On December 29, 2023, the EEOC notified Ms. May of its intent to close its investigation and issue a right to sue letter.[29] On March 12, 2024, Ms. May filed the instant complaint against Sagewood related to her employment and termination, including sex discrimination, hostile work environment, and retaliation claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and a claim for intentional infliction of emotional distress under Utah state law.

On April 22, 2024, Sagewood filed the instant motion to dismiss Ms. May's Complaint, arguing that it was barred due to judicial estoppel because of Ms. May's failure to identify claims against Sagewood in the bankruptcy proceedings.[30] On May 9, 2024, as a result of Sagewood's Motion, Ms. May filed a motion to reopen her Chapter 7 bankruptcy case to disclose her claim against Sagewood.[31] On June 20, 2024, Ms. May filed her Opposition.[32] On July 18, 2024, the bankruptcy court issued an order reopening the bankruptcy case.[33] On July 19, 2024, Sagewood filed its Reply.[34]

---

[26] May Decl. ¶ 11.
[27] *Id.*
[28] Compl. ¶ 8; Charge of Discrimination, ECF No. 1-1.
[29] Compl. ¶ 9; Dismissal and Notice of Rights, ECF No. 1-2.
[30] Defs.' Mot. 2.
[31] Motion to Reopen Bankruptcy, ECF No. 27-1.
[32] Pl.'s Opp'n to Defs.' Mot. to Dismiss ("Pl.'s Opp'n"), ECF No. 27.
[33] Case No. 2:22-bk-21319, Doc. 31.
[34] Defs.' Reply in Support of Mot. to Dismiss, ECF No. 30.

**STANDARD**

Dismissal is appropriate under Federal Rule of Civil Procedure 12(b)(6) when the complaint, standing alone, is legally insufficient to state a claim on which relief may be granted. Each cause of action must be supported by sufficient, well-pled facts to be plausible on its face.[35] In reviewing a complaint on a Rule 12(b)(6) motion to dismiss, factual allegations are accepted as true and reasonable inferences are drawn in a light most favorable to the plaintiff.[36] But the court disregards "assertions devoid of factual allegations" that are nothing more than "conclusory" or "formulaic recitation[s]" of the law.[37]

**DISCUSSION**

Sagewood argues that the court should apply judicial estoppel to bar Ms. May's claims based on her failure to disclose her claim against it in her bankruptcy proceedings. Judicial estoppel "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase."[38] Its "purpose is to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment."[39] Under this doctrine, a party that "assumes a certain position in a legal proceeding, and succeeds in maintaining that position" cannot later take a contrary position "simply because his interests have changed."[40]

---

[35] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).
[36] *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).
[37] *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 681 (2009).
[38] *New Hampshire v. Maine*, 532 U.S. 742, 749–50 (2001) (quoting *Pegram v. Herdrich*, 530 U.S. 211, 227 n.8 (2000)).
[39] *Id.* at 749–50 (internal citation and quotations omitted).
[40] *Id.* at 749.

The Tenth Circuit has "recognized the vitality of [judicial estoppel] in the specific context of bankruptcy proceedings."[41] In *Eastman v. Union Pac. R. Co.*,[42] the Tenth Circuit denied discharge to a Chapter 7 debtor who failed to disclose a personal injury suit as a potential asset before the bankruptcy court. In doing so, the court applied a three-part test to evaluate whether to apply judicial estoppel.[43] First, the court determines whether a party's subsequent position is "clearly inconsistent" with its former position.[44] Second, the court determines whether the party succeeded in persuading a court to accept that party's former position, "so that judicial acceptance of an inconsistent position in a later proceeding would create the *perception* that either the first or the second court was misled."[45] Third, the court determines whether the party seeking to assert the inconsistent position would gain an unfair advantage in the litigation if not estopped.[46]

Despite the general rule, the court may make an exception to judicial estoppel in cases of mistake or inadvertence only when the debtor establishes that she had either no knowledge of an undisclosed asset or no motive to conceal it.[47] Yet, "[t]he Tenth Circuit, like the vast majority of other courts, has not been overly receptive to debtors' attempts to recover on claims about which they inadvertently or mistakenly forgot to inform the bankruptcy court."[48] Deliberate manipulation can be inferred "[w]here a debtor has both knowledge of the claims and a motive to conceal them."[49]

---

[41] *Autos Inc. v. Gowin*, 244 F. App'x 885, 890 (10th Cir. 2007) (citing *Eastman v. Union Pac. R. Co.*, 493 F.3d 1151 (10th Cir. 2007)).
[42] 493 F.3d 1151 (10th Cir. 2007)).
[43] *See Eastman*, 493 F.3d at 1156.
[44] *Id.*
[45] *Id.*
[46] *Id.*
[47] *Ordonez v. Canyons Sch. Dist.*, 788 F. App'x 613, 617 (10th Cir. 2019) (citing *Eastman*, 493 F.3d at 1157).
[48] *Id.* (citation omitted).
[49] *Eastman*, 493 F.3d at 1157.

In *Ordonez v. Canyons School District*,[50] a plaintiff filed an EEOC charge shortly prior to filing for Chapter 7 bankruptcy.[51] In the bankruptcy proceeding's statement of financial affairs, the plaintiff failed to disclose her pending claim against the defendant.[52] The bankruptcy court discharged her debts and, after receiving a right-to-sue letter from the EEOC, she filed suit.[53] A few years later, during the pendency of the lawsuit and after the district judge informed plaintiff on two occasions that she should have disclosed a claim against the defendant, the plaintiff moved to reopen her bankruptcy to include her claims.[54]

The plaintiff argued that judicial estoppel should not apply because (i) the omission of her claim was an honest mistake, made inadvertently without any intent to conceal her claim from the bankruptcy court; and (ii) she was hindered by her lack of comprehension of English, her ignorance of the law, and bad advice from a person she paid to prepare her petition. In rejecting these arguments on a motion for summary judgment, the Tenth Circuit first pointed to *Eastman*, where the court rejected a similar attempt by the debtor to claim inadvertence or mistake through placing the blame for an omission on the bankruptcy attorney.[55] The court proceeded to find that she had a motive to conceal her claim so that she "could receive a full discharge in bankruptcy before proceeding with the lawsuit."[56] And finally, like in *Eastman*, the court rejected the argument that reopening the bankruptcy proceedings showed a lack of motive or lack of prejudice to her creditors because "[a]llowing [plaintiff] to back up and benefit from

---

[50] 788 F. App'x 613.
[51] *Id.* at 614.
[52] *Id.*
[53] *Id.*
[54] *Id.* at 614–15.
[55] *Id.* at 617.
[56] *Id.* at 618.

the reopening of [her] bankruptcy only after [her] omission had been exposed would suggest that a debtor should consider disclosing potential assets only if [she] is caught concealing them."[57]

In the instant case, Ms. May does not challenge that judicial estoppel would ordinarily bar her present claim due to her failure to identify it during the bankruptcy proceedings. Instead, she argues that her failure to disclose her claims in her bankruptcy case was inadvertent.

Ms. May contends that she inadvertently omitted information about her claims from her disclosure form because she did not know she had valid claims against Sagewood until she retained her attorney in this matter on August 12, 2022.[58] Prior to this date, Ms. May felt what happened to her was wrong but did not know if Sagewood had done anything illegal.[59] She further states that her bankruptcy attorney also did not advise her on what constituted a potential claim.[60] And when she learned through Sagewood's motion to dismiss that she had accidently omitted information, she moved to reopen the bankruptcy to disclose the claims against Sagewood as an asset.[61] Finally, because she did not intend to conceal her claims at the time of the bankruptcy proceedings, Ms. May argues her claims should move forward.[62]

Sagewood makes several arguments in response. First, Sagewood argues that a party need not know the exact law a third party may or may not have violated; it is sufficient that Ms. May knew the factual background that makes up her potential claim as of March 2022.[63] As the Second, Third, and Fifth Circuits have recognized, along with a number of district courts, to

---

[57] *Id.*; *see also Eastman*, 493 F.3d at 1160 ("A discharge in bankruptcy is sufficient to establish a basis for judicial estoppel, 'even if the discharge is later vacated.'") (citation omitted).
[58] Pl.'s Opp'n 9.
[59] May Decl. ¶ 11.
[60] *Id.* ¶ 8.
[61] Pl.'s Opp'n 9.
[62] May Decl. ¶ 12; Pl.'s Opp'n 10.
[63] Defs.' Reply 4–5.

prove knowledge of a cause of action, "the debtor does not need to 'know all the facts or even the legal basis for the cause of action; rather, if the debtor has enough information . . . prior to confirmation to suggest that [the debtor] may have a possible cause of action, then that is a 'known' cause of action such that it must be disclosed.'"[64]

Second, Sagewood states that Ms. May's representation by counsel in the bankruptcy proceedings supports estoppel and, to the extent Ms. May blames her bankruptcy attorney for failing to disclose her dispute against Sagewood, "the remedy for bad legal advice rests in malpractice litigation."[65] Third, Sagewood argues that the fact that Ms. May retained employment law counsel less than a month after receiving her discharge suggests deliberate concealment.[66] Fourth, Sagewood argues that moving to reopen bankruptcy to disclose the claims against Sagewood as an asset only after Sagewood filed its motion to dismiss is inconsequential because crediting a debtor's reopening of bankruptcy proceedings only after the omission had been exposed "would only diminish the necessary incentive to provide the bankruptcy court with a truthful disclosure of the debtor's assets."[67] Lastly, even if Ms. May did not intend to deceive the bankruptcy court at the time, Sagewood contends that the Tenth Circuit has rejected the proposition that courts must consider what the debtor subjectively believed or intended in its analysis.[68]

---

[64] *Schonebaum v. Shellpoint Mortg. Servicing*, No. 14-cv-03093-REB-KLM, 2016 WL 1104875, at *5 (D. Colo. Feb. 29, 2016), *report and recommendation adopted*, No. 14-cv-03093-REB-KLM, 2016 WL 1084371 (D. Colo. Mar. 21, 2016) (quoting *In re Coastal Plains, Inc.*, 179 F.3d 197, 208 (5th Cir. 1999)); *BPP Illinois, LLC v. Royal Bank of Scotland Grp. PLC*, 859 F.3d 188, 193 (2d Cir. 2017); *Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.*, 337 F.3d 314, 323 (3d Cir. 2003).
[65] Defs.' Reply 4 (citing *Eastman*, 493 F.3d at 1157).
[66] Defs.' Reply 6.
[67] Defs.' Reply 6–7 (citing *Eastman*, 493 F.3d at 1160).
[68] Defs.' Reply 7 (citing *Anderson v. Seven Falls Co.*, 696 F. App'x 341, 348 (10th Cir. 2017)).

However, the court need not resolve whether Ms. May's omission of her claims from the bankruptcy proceedings was inadvertent because the parties agree that Ms. May is not the real party in interest. Specifically, Ms. May states that if her motion to reopen the bankruptcy is granted—which it was shortly after Ms. May filed her Opposition—"the claims will become the property of the bankruptcy estate."[69] Similarly, Sagewood states that Ms. May's claims became the bankruptcy estate's property when she filed for bankruptcy in April 2022.[70]

Under Federal Rule of Civil Procedure 17(a), an action must be prosecuted in the name of the real party in interest. Upon the commencement of a Chapter 7 bankruptcy, the bankruptcy estate includes "all legal or equitable interests of the debtor."[71] A debtor's "legal or equitable interests" include "[a] debtor's potential causes of action."[72] "Assets not properly scheduled remain property of the bankruptcy estate."[73] As a result, the debtor loses all rights to enforce any unscheduled legal claims in his own name.[74] Because Ms. May's employment dispute occurred in March 2022, her cause of action is property of the bankruptcy estate and is enforceable only by the Chapter 7 trustee.[75] Therefore, the court dismisses the Complaint without prejudice because, as the parties agree, the claim stated in it belongs to the bankruptcy estate, not Ms. May.

Under Federal Rule of Civil Procedure 17(a)(3),

> [t]he court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action. After

---

[69] Pl.'s Opp'n 11.
[70] Defs.' Reply 8.
[71] 11 U.S.C. § 541(a).
[72] *Clementson v. Countrywide Fin. Corp.*, No. 10-cv-01956-WYD-KMT, 2011 WL 1884715, at *5 (D. Colo. Jan. 27, 2011) (citing *Smith v. Rockett*, 522 F.3d 1080, 1084 (10th Cir. 2008)), *report and recommendation adopted*, No. 10-cv-01956-WYD-KMT, 2011 WL 1884627 (D. Colo. May 18, 2011), *aff'd*, 464 F. App'x 706 (10th Cir. 2012).
[73] *Clementson*, 2011 WL 1884715, at *5 (quoting *Clark v. Trailiner Corp.*, No. 00-cv-5020, 2000 WL 1694299, at *1 (10th Cir. Nov. 13, 2000); 11 U.S.C. § 554(d) ("property of the estate that is not abandoned under this section and that is not administered in the case remains property of the estate.").
[74] *Clark v. Trailiner Corp.*, 242 F.3d 388 (10th Cir. 2000).
[75] *See Mauerhan v. Wagner Corp.*, 649 F.3d 1180, 1184 (10th Cir. 2011) (citing 11 U.S.C. § 541(a), 323).

ratification, joinder, or substitution, the action proceeds as if it had been originally commenced by the real party in interest.

On or about April 25, 2024, legal counsel for Ms. May informed the United States Trustee about this case.[76] On May 9, 2024, the Trustee moved to reopen the bankruptcy case.[77] On July 18, 2024, the bankruptcy court issued an order granting the Trustee's motion, reopening the case, and directing the Trustee to appoint a Chapter 7 trustee.[78] On this same date, the United States Trustee appointed a Chapter 7 trustee.[79] The Chapter 7 trustee has had more than three months to move for substitution in this action, but has not done so. On this record, three months seems a "reasonable time" for the real party in interest to move for substitution in the action. However, out of an abundance of caution, the court will afford the Chapter 7 trustee an additional two weeks to move for substitution, should the trustee determine to do so. Otherwise, the court will dismiss the action without prejudice for the reasons stated in this order.[80]

## ORDER

It is hereby **ORDERED** that Sagewood's Motion to Dismiss Ms. May's Complaint is **GRANTED WITHOUT PREJUDICE**. It is **FURTHER ORDERED** that the Chapter 7 trustee has two weeks from the date of this order to move for substitution in this case. Otherwise, the court will dismiss the action without prejudice without further notice.

---

[76] Case No. 2:22-bk-21319, Doc. 22 ¶ 6, ECF No. 27-2.
[77] *Id.* at 1.
[78] Case No. 2:22-bk-21319, Doc. 31.
[79] Case No. 2:22-bk-21319, Doc. 32.
[80] Of course, the court expresses no view on whether the Chapter 7 trustee should seek to intervene, file a separate case, or take any other action.

Signed October 23, 2024.

BY THE COURT

David Barlow
United States District Judge